ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2017-Jan-19  16:23:38
60CV-17-298
C06D12 : 17 Pages

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
CIVIL DIVISION

RICHARD L. COX, TRUSTEE, ON BEHALF OF THE
BANKRUPTCY ESTATE OF KELLY RYAN                                    PLAINTIFF

vs.                                          CASE NO. ___

AMERICAN RED CROSS; and JOHN DOE
DEFENDANTS 1-5                                                    DEFENDANTS

## COMPLAINT

The Plaintiff, Richard L. Cox, Trustee, on Behalf of the Bankruptcy Estate of Kelly Ryan,

states the following as his Complaint against the Defendant, American Red Cross:

### Parties

1.      Kelly Ryan is a resident of White County, Arkansas. On March 21, 2016, Kelly Ryan

filed a Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code. *In Re: Kelly Ryan,*

*Debtor,* United States Bankruptcy Court, Eastern District of Arkansas, Little Rock Division, Case

No. 16-11527.

2.      Plaintiff is the Trustee in the above-entitled case duly qualified and acting.  Plaintiff

has been authorized to employ attorneys for special purpose pursuant to 11 U.S.C. § 327to pursue

this matter.  See Exhibit "A" attached hereto and incorporated herein by reference.

3.      American Red Cross is a federally chartered corporation.  See 36 U.S.C. §§

300101-02.  American Red Cross operates a nationwide blood bank that collects blood and blood

components from donors and supplies it to hospitals for use in transfusions.  American Red Cross's

blood banking activities are subject to regulations enforced by the United States Food and Drug

Administration.

4.      John Doe Defendants 1-5 were servants, agents, employees or ostensible agents of American Red Cross who were charged with caring for Kelly Ryan. They are individually liable for their conduct as described herein, and American Red Cross should be held vicariously liable for their conduct under principles of agency and respondeat superior. The identity of all such individuals are unknown at this time. Pursuant to Ark. Code Ann. § 16-56-125 and the Affidavit attached hereto as Exhibit "B", when the identity of these individuals or entities is discovered, this pleading will be appropriately amended.

### Jurisdiction and Venue

5.      This Court has jurisdiction of this matter under 36 U.S.C. § 300105(a)(5), a provision in American Red Cross's charter providing that it may "sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States." 36 U.S.C. 300105(a)(5). Jurisdiction in this court is proper pursuant to Ark. Const. Art. 7 § 11, Ark. Code Ann. § 16-13-201, and Ark. Const. Amendment 80, § 6. This Court has personal jurisdiction over the Defendants due to the Defendants' contacts with the State of Arkansas. The medical treatment and events giving rise to this cause of action occurred in Little Rock, Pulaski County, Arkansas.

6.      The events giving rise to this lawsuit occurred in Arkansas. Venue is proper pursuant to Ark. Cod Ann. § 16-60-112 and § 16-55-213(e) as the treatment giving rise to this cause of action occurred in Little Rock, Pulsaki County, Arkansas.

### Factual Allegations

7.      Paragraphs 1 through 6 are incorporated herein by reference.

8.      This is an action for injuries, past and future pain and suffering and mental anguish, and past and future lost wages and lost earning capacity.

9.    Kelly Ryan has a severe allergy to iodine.  Despite her severe allergy, she chose to voluntarily donate blood to help people survive medical emergencies.  This type of altruistic behavior should be encouraged in a civilized society.  Kelly Ryan trusted American Red Cross to accept her donation in a safe manner given her known and disclosed allergy to iodine.

10.    On February 17, 2015, Kelly Ryan voluntarily participated in a blood drive conducted by American Red Cross that took place in a meeting room located inside the East Campus building of the Arkansas Children's Hospital.  Ms. Ryan had previously donated blood without incident and was in American Red Cross' donor system.

11.    Regarding Ms. Ryan's attempts to donate blood, American Red Cross completely controlled the donation process, including the maintenance of its facilities, the intake process, the screening process, the personnel involved, the forms used, the equipment used, the process used to clean equipment, and the procedures and protocols to be followed by its employees, agents and representatives.  American Red Cross controlled the process to be followed to communicate American Red Cross policies and procedures to its employees, agents and representatives involved in the blood donation process.

12.    After Ms. Ryan was signed in on a computer by a Red Cross representative, she informed the American Red Cross representative of her severe allergy to iodine.  Iodine exposure to individuals with an allergy is serious and often immediately life threatening.  Had Ms. Ryan been informed of the use of iodine and/or the potential exposure to iodine at this location she should have simply not followed through with her voluntary donation.  American Red Cross was required to have protocols in place to prevent people with this allergy from being exposed to this dangerous chemical.  Ms. Ryan was assured that she would not be exposed to iodine.

-3-

13.     Ms. Ryan was instructed to sit in a black chair and to place her arm on the arm rest.

14.     Unbeknownst to Ms. Ryan, the American Red Cross representatives were not following proper protocols to prevent iodine exposure.

15.     Also unbeknownst to Ms. Ryan, the chair in which Ms. Ryan had been instructed to sit, was covered with iodine. As a result, Ms. Ryan was improperly and significantly exposed to iodine when she sat in the chair at the instruction of the American Red Cross representative.

16.     Ms. Ryan first noticed her arm was itching. When she looked at her arm, she noticed it was covered in whelps and iodine. She ran to the restroom across the hall.

17.     Ms. Ryan told a co-worker and the American Red Cross representatives that she had been exposed and that she was rushing to the emergency room (located in another building of Arkansas Children's Hospital). She also stated that she needed an Epi-Pen.

18.     After Ms. Ryan left the room, the American Red Cross representative admitted to persons who were present that her chair had not been properly cleaned. The representative then wiped down the chair.

19.     On her way to the emergency room, Ms. Ryan flagged down a security guard who transported her to a trauma room.

20.     Ms. Ryan was diagnosed with an anaphylactic allergic reaction. She was fighting for air because her throat was closing up. She was emergently treated with epinephrin and was transferred to the hospital at University of Arkansas For Medical Sciences (UAMS) via ambulance.

21.     At UAMS, Ms. Ryan arrived with worsening respiratory distress. She was intubated and admitted to the Medical Intensive Care Unit. She suffered a Myocardial Infarction (heart attack). She remained intubated until February 19. She was discharged on February 22 and advised to make

a plan of continued care with a cardiologist. Ms. Ryan continues to suffer from permanent damage to her heart.

22.    American Red Cross is required to document donor complications pursuant to a consent decree reached by American Red Cross and the United States in *United States v. American National Red Cross*, No. 93–0949, 1993 WL 186094, at 1 (D.D.C. May 12, 1993). The case arose when the United States filed a complaint for permanent injunctive relief on behalf of the FDA alleging that the Red Cross violated the Federal Food, Drug, and Cosmetic Act and the Public Health Service Act. The Consent Decree, which was amended in 2003, requires the Red Cross to follow certain policies and procedures regarding blood safety.

23.    American Red Cross has represented that its representatives failed to create or produce a "Donor Reaction/Injury Record" (DRIR) for this incident. DRIR's are used by American Red Cross to document possible complications from blood donations. Entries are made memorializing the potential complications described by the donor, symptoms described by the donor, and conversations between the donor and American Red Cross Representatives. The types of information contained in a DRIR may include a description of general instructions given to the donor, and whether the donor is seeking medical care and from whom.

24.    To this date, American Red Cross either cannot, or it refuses to, disclose the identity of its employees, agents and representatives involved in this incident. It also cannot, or refuses to, identify whether the people involved in the donor process were trained, licensed medical care professionals.

-5-

## COUNT I
## MEDICAL NEGLIGENCE

25.     Paragraphs 1 through 24 are incorporated herein by reference.

26.     American Red Cross operates a nationwide blood bank that collects blood and blood components from donors and supplies it to hospitals. American Red Cross's blood banking activities are subject to regulations enforced by the United States Food and Drug Administration.

27.     American Red Cross provided medical care to Kelly Ryan. American Red Cross employed medical care professionals who had a non-delegable duty to possess and apply with reasonable care the degree of skill and learning ordinarily possessed and used by members of their profession in good standing, engaged in the same specialty in the locality in which they practice.

28.     American Red Cross employed John Doe medical care professionals who failed to meet the requisite standard of care by, among other things:

> (a)     Improperly exposing Ms. Ryan to iodine after having been advised of her severe allergy;
>
> (b)     Improperly reusing gloves, chairs and other items of equipment without properly cleaning these items;
>
> (c)     Using contaminated equipment for patient care;
>
> (d)     Failing to follow proper protocols to ensure that patients, such as Ms. Ryan, with known allergies to iodine, were not exposed to iodine during the blood donation process;
>
> (e)     Failing to properly monitor and observe Ms. Ryan and to ensure a continuity of care;
>
> (f)     Failing to provide, with reasonable care, the degree of skill and

learning ordinarily possessed and used by a members of their profession in good standing, engaged in the same specialty in the locality in which they practice;

(g)     Failure to timely and properly respond to Ms. Ryan's medical emergency;

(h)     Failing to properly document Plaintiff's reaction and injury; and

(I)     Otherwise failing to meet the standard of care, including taking measures to conceal their negligence.

29.     Medical care professionals possessing, and applying with reasonable care, the degree of skill and learning ordinarily possessed and used by members of the profession in good standing would have ensured that Ms. Ryan was not exposed to iodine.

30.     American Red Cross employed John Doe medical care professionals who caused an emergent condition and then failed to respond in a timely fashion or with adequate evaluation, intervention, and treatment, directly causing the injuries to Ms. Ryan. These medical care professionals' failures to meet the requisite standard of care was the proximate cause of all injuries and damages suffered by Ms. Ryan.

31.     The negligence involved with the care of Ms. Ryan was perpetrated by the employees, agents and representatives of American Red Cross and therefore, any such negligence is imputed upon American Red Cross by the doctrine of respondeat superior and vicarious liability.

32.     As a proximate result of the joint and several negligence of the Defendants, Ms. Ryan suffered conscious pain, suffering, discomfort, mental anguish, and other damages described below.

-7-

## COUNT II
## BREACH OF THE DUTY TO OBTAIN MS. RYAN'S INFORMED CONSENT

33.     Paragraphs 1 through 32 are incorporated herein by reference.

34.     Kelly Ryan has a severe allergy to iodine.  Despite her severe allergy, she chose to voluntarily donate blood to help people survive medical emergencies.  This type of altruistic behavior should be encouraged in a civilized society.  Kelly Ryan trusted American Red Cross to accept her donation in a safe manner given her known and disclosed allergy to iodine.

35.     American Red Cross provided medical care to Kelly Ryan.

36.     Ms. Ryan's voluntary attempt to donate blood did not constitute an emergency situation.  Thus, American Red Cross employed medical care professionals who had a non-delegable duty to obtain Ms. Ryan's consent before exposing her to dangerous chemicals such as iodine during the blood donation process.

37.     In obtaining consent, American Red Cross' medical care professionals had a duty to supply adequate information to enable Ms. Ryan to make a reasoned and intelligent decision before submitting Ms. Ryan to a process that would result in her exposure to the dangerous chemical known as iodine.

38.     American Red Cross employed medical care professionals who breached these duties and failed to obtain Ms. Ryan's informed consent before exposing her to the dangerous chemical known as iodine.

39.     Had American Red Cross' medical care professionals informed Ms. Ryan that she would have been exposed to iodine during the blood donation process, she would have not consented to such exposure.  In fact, had Ms. Ryan been adequately informed of the risk of iodine exposure

-8-

associated with American Red Cross' blood donation process, she would have not followed through with her voluntary blood donation, would not have been exposed to iodine, and would not have suffered the damages described herein.

40.    The breach of the duty to obtain Ms. Ryan's informed consent before exposing her to the dangerous chemical known as iodine was perpetrated by the employees, agents and representatives of American Red Cross and therefore, any such breach, and the resulting liability, is imputed upon American Red Cross by the doctrine of respondeat superior and vicarious liability.

41.    As a proximate result of the joint and several breaches of the duty to obtain informed consent perpetrated by the Defendants, Ms. Ryan suffered conscious pain, suffering, discomfort, mental anguish, and other damages described below.

## COUNT III
## ORDINARY NEGLIGENCE AND INADEQUATE POLICIES AND PROCEDURES:

42.    Paragraphs 1 through 41 are incorporated herein by reference.

43.    American Red Cross operates a nationwide blood bank that collects blood from donors and supplies it to hospitals for use in transfusions. American Red Cross's blood banking activities are subject to regulations enforced by the United States Food and Drug Administration.

44.    American Red Cross represents to the public and potential blood donors that it is a competent and competently-staffed organization that operates a nationwide blood bank that collects blood and blood components from donors and supplies it to hospitals for use in transfusions. Despite the representations, American Red Cross does not have policies and procedures related to the prevention of iodine exposure for patients with iodine allergies. Alternatively, American Red Cross does not have adequate policies and procedures in place to ensure that its policies and procedures

relating to the prevention of iodine exposure are followed and enforced by its employees, agents and representatives.

45.     Regarding Ms. Ryan's attempts to donate blood, American Red Cross completely controlled the donation process, including the maintenance of its facilities, the intake process, the screening process, the personnel involved, the forms used, the equipment used, the process used to clean equipment, and the procedures and protocols to be followed by its employees, agents and representatives.   American Red Cross controlled the process to be followed to communicate American Red Cross policies and procedures to its employees, agents and representatives involved in the blood donation process.

46.     American Red Cross was responsible for Ms. Ryan while under its care and undertook to care for her during the blood donation process, an undertaking which established a duty of ordinary care to her.

47.     Iodine allergies are known to The American Red Cross to be a risk involved in the donation of blood.  Iodine exposure is a known risk during the blood donation process and must be prevented through the use of proper procedures, protocols and training.  Had Ms. Ryan been informed of the use of iodine and/or the potential exposure to iodine at this location she would have simply not followed through with her voluntary donation.

48.     American Red Cross breached its duty owed to Ms. Ryan by causing her to be exposed to iodine after being advised of her severe allergy.  American Red Cross failed to implement proper policies and protocols to prevent Ms. Ryan's exposure.  Additionally, American Red Cross failed to have proper protocols and policies in place to communicate the method that its employees, agents and representatives should follow to ensure that donors with known iodine allergies, such as

-10-

Ms. Ryan, were not exposed to iodine during the donation process.

49.     Additionally, while acting as a medical care facility, American Red Cross had a duty to use ordinary care to determine the physical condition of Ms. Ryan and to furnish her the care and attention reasonably required by her condition and known allergy to iodine.  American Red Cross breached its duty owed to Ms. Ryan by failing to use ordinary care to determine Ms. Ryan's physical condition and to furnish her the care and attention reasonably required by her condition.

50.     American Red Cross knew, or in the exercise of ordinary care should have known, that it was employing and/or using non-medical individuals who were not properly trained to prevent iodine exposure during the blood donation process.

51.     American Red Cross was negligent in that it failed to exercise ordinary care to investigate and ensure that its non-medical care positions were filled with sufficient, adequate, qualified, and trained personnel.

52.     American Red Cross was also negligent in that it failed to exercise ordinary care to investigate and ensure that it was staffed with sufficient, adequate, qualified, and trained non-medical personnel.  The hiring, utilizing, and retaining of insufficient and inadequate non-medical staff was negligence and was a proximate result of the injuries suffered by Ms. Ryan.

53.     The negligence involved with the care of Ms. Ryan was perpetrated by the employees, agents and representatives of American Red Cross and therefore, any such negligence is imputed upon American Red Cross by the doctrine of respondeat superior and vicarious liability.

54.     The failures and negligence of American Red Cross and its employees, agents and representatives were a direct and proximate cause of the injuries and damages suffered by Ms. Ryan.

## DAMAGES

55.    After the exposure, Ms. Ryan was diagnosed with an anaphylactic allergic reaction. She was fighting for air because her throat was closing up.  She was emergently treated with epinephrin and was transferred to the hospital at University of Arkansas For Medical Sciences (UAMS) via ambulance.

56.    At UAMS, Ms. Ryan arrived with worsening respiratory distress. She was intubated and admitted to the Medical Intensive Care Unit.  She suffered a Myocardial Infarction (heart attack). She remained intubated until February 19.  She was discharged on February 22 and advised to followup with a cardiologist.  Ms. Ryan continues to suffer permanent damage to her heart.

57.    Kelly Ryan prays that she have and recover damages and judgment from and against the Defendants as compensation for conscious mental and physical pain and suffering and emotional distress, past and future medical expenses necessitated by the iodine exposure; loss of earnings; loss of earning capacity; the present value of the loss of future earnings; and for all other damages allowed by law in an amount which exceeds the amount required for federal diversity jurisdiction.

58.    From the time of her arrival to the time of her exposure, there were repeated instances of lack of care, substandard care, and improper care by unqualified and untrained individuals.  There was also a failure on the part of American Red Cross' employees, agents and representatives to follow the most basic procedures demonstrating a lack of training by American Red Cross and also inadequate procedures in place.  These instances of negligence and inaction are actionable in isolation and in combination, and they also demonstrate a reckless disregard for, and a conscious indifference to, Ms. Ryan's health and well being justifying the award of punitive damages.

59.    American Red Cross knew or should have known in light of the surrounding circumstances, that their conduct would naturally and probably result in injury or damage, and Defendants continued the conduct with malice and in reckless disregard of the consequences from which malice might be inferred.

60.    American Red Cross is required to document donor complications pursuant to a consent decree reached by American Red Cross and the United States in *United States v. American National Red Cross*, No. 93-0949, 1993 WL 186094, at 1 (D.D.C. May 12, 1993). The Consent Decree requires American Red Cross to follow certain policies and procedures regarding blood safety. American Red Cross failed and refused to produce a "Donor Reaction/Injury Record" (DRIR) for this incident. American Red Cross has also refused to disclose the identity of its representatives involved in this incident. Thus, American Red Cross has engaged in a cover up regarding this terrible event. Accordingly, Ms. Ryan is entitled to punitive damages in an amount to be determined by the jury and an adverse inference instruction at trial.

61.    Ms. Ryan should have and recover judgment in an amount to be set by the jury in excess of the minimum amount required for federal court diversity from Defendants as compensatory damages. She should also be awarded punitive damages as appropriate.

62.    Plaintiff reserves the right to amend this Complaint and plead further in this case.

63.    Plaintiff respectfully demands a jury trial.

WHEREFORE, the Plaintiff, Richard L. Cox, Trustee, on Behalf of the Estate of Kelly Ryan, prays that he have and recover judgment from and against the Defendants, jointly and severally in an amount in excess of the minimum amount for federal court diversity jurisdiction; for punitive damages; for all other damages allowed by law; and for all other relief for which he may be entitled.

Respectfully Submitted,

Tony L. Wilcox (#93084)
**Wilcox Law Firm**
600 South Main Street
Jonesboro, Arkansas 72401
(870) 931-3101

-and-

Chris A. Averitt (#98123)
**Scholtens & Averitt, PLC**
600 South Main Street
Jonesboro, Arkansas 72401
(870) 972-6900

Attorneys for Plaintiff

By: _____
Chris A. Averitt (#98123)

-14-

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

IN RE:  KELLY RYAN, DEBTOR                    CASE NO. 16-11527
                                                         CHAPTER 7

ORDER GRANTING
APPLICATION TO EMPLOY ATTORNEYS
FOR SPECIAL PURPOSE

Comes on for consideration the Application of Richard L. Cox, Trustee, to Employ Attorneys for Special Purpose (DE #37) (hereafter "the Application"), and the Court finds as follows:

1.    The Debtor filed a Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code on March 21, 2016.

2.    Applicant is the Trustee in the above-entitled case duly qualified and acting.

3.    Applicant wishes to employ as attorneys for special purpose pursuant to 11 U.S.C. § 327 Wilcox & Lacy, PLC, Scholtens & Averitt, PLC and Rainwater Holt & Sexton (hereinafter referred to as Attorneys), to continue to handle litigation matters for which said attorneys have previously represented the Debtor regarding a personal injury claim.

4.    Applicant has selected Attorneys for the reason that said firms represented the Debtor in regard to the aforesaid personal injury claim prior to the commencement of the instant bankruptcy and has a sufficient degree of familiarity with such matters that it would be inefficient to change counsel at this stage.

EOD: September 12, 2016



EXHIBIT
A

5.     Applicant and Attorneys have agreed, subject to this Court's approval, that Attorneys will represent the estate in the aforesaid matters for a contingency fee of 45% of all monies recovered, plus reimbursement of reasonable costs and expenses.

6.     The aforesaid law firms are not disinterested because they have an interest in the litigation, as the firms are to be hired on a contingency fee basis. However, said firms are not disqualified for employment as special counsel because, as appears from the Affidavits of the Attorneys, which accompanies the instant Application, such law firms do not represent or hold any interest adverse to the Debtor or the estate with respect to the special matters upon which said firms are to be employed.

7.     The terms of the proposed contingency fee described herein are comparable to those in similar, non-bankruptcy matters.

**IT IS THEREFORE ORDERED** that the Applicant is granted and that the employment of the law firms of Wilcox & Lacy, PLC, Scholtens & Averitt, PLC and Rainwater Holt & Sexton, under the terms herein specified herein, to represent him as special counsel is approved by the Court.

Phyllis M. Jones
United States Bankruptcy Judge
Dated: 09/12/2016

*Distribution via ECF to:*

RICHARD L. COX
LONNIE GRIMES
TONY L. WILCOX
ROBERT M. SEXTON
CHRIS AVERITT

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
CIVIL DIVISION

RICHARD L. COX, TRUSTEE, ON BEHALF OF THE
BANKRUPTCY ESTATE OF KELLY RYAN                                    PLAINTIFF

vs.                                    CASE NO._____

AMERICAN RED CROSS; and JOHN DOE
DEFENDANTS 1-5                                                     DEFENDANTS

### AFFIDAVIT

I, Chris A. Averitt, attorney for  Richard L. Cox, Trustee, on Behalf of the Estate of Kelly

Ryan, do solemnly swear and affirm that the identity of the additional tortfeasors stated as John Does

1-5 are unknown.  I have attempted a diligent inquiry to ascertain the identity of any such tortfeasors,

but have been unable to determine the identity of said tortfeasors.  Upon determination of the identity

of the additional tortfeasors, I will amend the Complaint and substitute the real names for the

pseudo-names.

_____
Chris A. Averitt


STATE OF ARKANSAS
COUNTY OF CRAIGHEAD

SUBSCRIBED AND SWORN TO before me this 9th day of January, 2017.

_____
NOTARY PUBLIC

My Commission Expires: 11-08-26

OFFICIAL SEAL - #12699358
STEPHANI WINEMILLER
NOTARY PUBLIC-ARKANSAS
CRAIGHEAD COUNTY
MY COMMISSION EXPIRES: 11-08-26

EXHIBIT
B